UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER IMELMANN,                    Case No. 15-10343

                    Plaintiff,           Mark A. Goldsmith
v.                                       United States District Judge

CORIZON, INC., *et al.*,                 Michael Hluchaniuk
                                         United States Magistrate Judge
                    Defendants.
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [Dkt. 15]

## I.    PROCEDURAL HISTORY

On January 26, 2015, plaintiff Christopher Imelmann, a state prisoner

currently housed at the Lakeland Correctional Facility in Coldwater, Michigan,

acting *pro se*, filed a Complaint seeking injunctive and monetary relief alleging

that defendants discriminated against him in violation of Title II of the Americans

With Disabilities Act and subjected him to cruel and unusual punishment in

violation of the Eighth Amendment of the U.S. Constitution.

On May 1, 2015, plaintiff filed a motion for a preliminary injunction

seeking an order instructing defendants to provide the necessary amount of

urological supplies (4-6 catheters and lubricant per day) for the safe insertion of a

urethral catheter for intermittent self-catheterization.  On June 1, 2015, defendant

Corizon Health, Inc. responded to plaintiff's motion for a preliminary injunction. (Dkt. 24).  On June 4, 2015, co-defendant, registered nurse Rhonda Ryder, adopted and incorporated by reference, the arguments advanced by Corizon at Dkt. 24. (*See* Dkt. 26).   Plaintiff filed a reply brief on June 16, 2015.  (Dkt. 27).  On September 16, 2015, the court notified the parties of a telephonic motion hearing to be held on October 5, 2015.  (Dkt. 35).  On October 5, 2015, the court held a telephonic motion hearing on plaintiff's motion for a preliminary injunction and took the matter under advisement.  At the hearing, the undersigned requested defendants to submit supplemental briefing by October 19, 2015, and allowed an opportunity for plaintiff to respond.  On October 19, 2015, defendant Ryder submitted her supplemental brief in response to plaintiff's motion.  (Dkt. 43).  On the same day, Corizon filed its supplemental brief.  (Dkt. 44).  Plaintiff filed his reply to the supplemental briefing on November 5, 2015.  (Dkt. 47).

The motion is now ready for report and recommendation.  For the reasons that follow, the undersigned concludes that because MDOC has modified plaintiff's medical protocol to allow for four catheters and four packets of lubricating jelly per day, essentially what plaintiff asked for in his motion for preliminary injunction, plaintiff cannot sustain a claim of irreparable harm.  As such, the court **RECOMMENDS** that plaintiff's motion for preliminary injunction be **DENIED**.

## II.   FACTUAL BACKGROUND

Plaintiff raises two primary issues in his civil rights complaint.  First, plaintiff alleges that defendants failed to provide him with a referral for an outside consultation with a neurosurgeon who could have corrected a broken instrumentation in his spine.  (Dkt. 1, at 3).  And, second, plaintiff alleges that defendants failed to supply him with the necessary urological supplies, including catheters and lubricating jelly.  (*Id*. at 4).  Plaintiff claims that defendants acted in violation of Title II of the Americans with Disabilities Act and the Eighth Amendment to the U.S. Constitution.  (*Id*. at 5).  Only the second issue is germane to the court's disposition of the motion currently pending; therefore, the undersigned will only focus on the factual background relevant to that issue.

Plaintiff claims that he is forced to use a urethral catheter in order to empty his bladder because a spinal cord injury that occurred in 1985 which left him an "incomplete" (T-12) paraplegic.  (Dkt. 1, at ¶ 25).  Plaintiff alleges that he has been using a catheter to empty his bladder since his spinal cord injury.  (*Id*.)  As a result, plaintiff claims that it is difficult to insert a catheter because scar tissue has built-up in his urethra over time.  (*Id*.)

On September 20, 2012, plaintiff was transferred from the Woodland Center Correctional Facility (WCCF) to Lakeland Correctional Facility (LCF) where he was placed in the medical unit.  (*Id*. ¶ 26).  Plaintiff asserts that on January 24,

2013, he was seen by Dr. Kenneth Jordan for a chronic care visit.  During this visit, plaintiff indicates that he advised Dr. Jordan that the nurses at LCF were refusing to dispense lubricating jelly with his urethral catheter supplies.  (*Id*.) Plaintiff alleges that Dr. Jordan specified "K-Y Jelly" on plaintiff's special accommodation notice.  (*Id*.)  However, the nurses at LCF persisted in not providing the lubricating jelly.  Plaintiff avers that Dr. Jordan then wrote a prescription for the lubricating jelly and forwarded that order to the regional medical officer (RMO) for approval.  (*Id*.)  Plaintiff alleges that the RMO approved Dr. Jordan's request; however, the LCF nurses still refused to provide the lubricating jelly.  (*Id*. ¶ 27).  Plaintiff alleges that on at least two separate occasions defendant nurses Smith and Ryder told plaintiff to "use tap-water, it won't kill you."  (*Id*.)  Plaintiff argues that catheterizing without the use of lubricating jelly is akin to being tortured, and was impossible because of the scar tissue in plaintiff's urethra.  Plaintiff further avers that defendant's health information manager, Sharon Curtis, and registered nurse, Dorene Smith, had circulated a memo forbidding the dispensing of lubricating jelly for any reason. (*Id*.)

On February 5, 2013, plaintiff filed a grievance (LCF-13-02-0164-12i1) concerning the nursing staff at LCF and their refusal to dispense lubricating jelly with his urethral catheter supplies despite having Dr. Jordan's prescription and

4

RMO approval.  (*Id*. at ¶ 28).  The grievance was summarized by registered nurse

Joy Parish as follows:

> Mr. Imelmann came to health care had an encounter with
> a new nurse at LCF that was following DOC's policies,
> she did not have access to his health record therefore she
> followed the policy and did not dispense the lubricating
> jelly. Mr. Imelmann has since been issued the supplies he
> needs and this issue has been resolved. Mr. Imelmann
> has been provided with a copy of the updated
> accommodation, therefore in the future, should he
> encounter new staff and this issue arise again, he can
> show them the accommodation. This issue is considered
> resolved.

(Dkt. 1 ¶ 29).  Plaintiff claims that every staff member within the MDOC has

access to every prisoner's health care information on the EMR.  Moreover,

plaintiff claims that he asked nurse Crinion if she would ever catheterize a patient

without using lubricating jelly and she replied, "hell no."  Plaintiff also asked

nurse Parish and defendant Smith to see the policy that forbids the dispensing of

lubricating jelly, or the policy number, but both declined plaintiff's request.

Plaintiff appealed the grievance resolution disputing that it had been

resolved.  (Dkt. 1 ¶ 32).  At the time of the appeal, plaintiff was being issued seven

single-use packets of lubricating jelly per week and seven single-use catheters per

week.  (*Id*.)  Plaintiff claims that this has since changed to two per week.

According to plaintiff, this provision of supplies limits him to emptying his

bladder only one time per day.  (*Id*.)  It also forces plaintiff to re-use contaminated

catheters. (*Id*.) Plaintiff claims that this practice contravenes the manufacturer's labeling which states that they are intended for "single-use only," and is also discriminatory to him based on his disability status. (*Id*.)

The response to the grievance indicates that an infection control manual was approved by the chief medical officer with instructions for clean intermittent self-catheterization. (Dkt. 1 ¶ 33). "Prisoners requiring Equipment for intermittent self-catheterization shall be provided the following items: Two catheters each week, antibacterial bar soap, one small biohazard waste bag, one small disposable basin for continuous use to clean catheter (do not replace every week or month) . . . ." (*Id*.) Plaintiff claims that the response did not contain any mention of lubricating jelly. (*Id*.)

Plaintiff alleges that Corizon is unwilling to provide him with 4-6 catheters per day, which is the medical community standard for intermittent self-catheterization. (*Id*. ¶ 34). Plaintiff explains that prior to his transfer to LCF, he had no problem obtaining the urological supplies that he needed to self-catheterize. (*Id*. ¶ 35). Without the required supplies, plaintiff claims that he has developed a condition unique to persons with spinal cord injuries called autonomic-disreflexia, a potentially fatal condition, caused by substantial amounts of urine in the bladder. (*Id*. ¶ 37).

Subsequent to plaintiff filing his motion for preliminary injunction, plaintiff's medical detail for urological supplies was modified. (Dkt. 36). On or around September 3, 2015, a meeting occurred between LCF Health Unit Manager (HUM) Betsy Roberts-Spearman, PA Margaret Ouellette, and plaintiff's primary physician, Dr. Oliver Johnston, to determine how many catheters plaintiff required. (Dkt. 43, at 2-3). Based on plaintiff's daily routine, activity and sleep cycle, it was determined that plaintiff would need to self-catheter every four to six hours. (*Id*. at 3). As such, starting on September 15, 2015, defendants started providing plaintiff with four catheters and two lubricating jelly packets on a daily basis. (Ex. A, ¶ 6). HUM Roberts-Spearman met with plaintiff on September 14, 2015 and explained that MDOC was changing the guidelines regarding self-catheters, and his resulting new protocol. (*Id*., ¶ 7). At the time Corizon filed its supplemental brief, MDOC had again revised its guidelines and plaintiff was receiving four catheters and four lubricating jelly packets on a daily basis. (Dkt. 43, at 3-4).

## III.   PARTIES' ARGUMENTS

### A.   Plaintiff's Arguments

When plaintiff filed his motion for preliminary injunction he contended that he was issued seven single-use packets of lubricating jelly per week, which allowed him to empty his bladder only one time per day. (Dkt. 15, at 3).

7

However, MDOC has now modified plaintiff's (and it appears its global) policy regarding self-catherization.  Plaintiff's motion focused on the fact that the urethra is one of the most sensitive parts of the human body, and any attempt to use a catheter without the use of lubricating jelly is akin to torture.  Plaintiff argued that he was retaining in excess of 1000-cc's of urine at a time because he was unable to empty his bladder more frequently.  As such, his bladder was becoming distended causing another serious medical condition known as "autonomic-disreflexia."  Plaintiff indicated that he made defendants aware of his condition, but they continued with their discriminatory and reckless practice.  In addition, plaintiff claimed that by forcing him to "re-use" already contaminated catheters, defendants exposed him to potentially deadly pathogens and infections within his urinary tract.  In his supplemental reply, plaintiff acknowledges that the current allotment of four catheters and four packages of lubricating jelly per day is adequate to meet his medical needs, however, plaintiff requests an order to continue the present intermittent catheter program for plaintiff of four catheters and four packets of lubricating jelly per day.  (Dkt. 48, at 5-6).

      B.    <u>Defendants' Arguments</u>[1]

---

[1]  On June 4, 2015, co-defendant, Rhonda Ryder, pursuant to Fed. R. Civ. P. 10(c) asked the court to adopt and incorporate the arguments advanced by co-defendant Corizon Health, Inc. (Dkt. 24), also requesting that plaintiff's motion for a preliminary injunction be denied.  (Dkt. 26).

Following MDOC's change in plaintiff's medical protocol, Corizon argues that notwithstanding their previous arguments regarding the efficacy and constitutionality of the clean catheterization techniques (which it does not abandon), it appears that beginning in September 2015, MDOC increased the number of catheters for plaintiff to four per day, and packages of lubricating jelly to two per day. Plaintiff's primary medical provider, Dr. Oliver Johnson, opined that plaintiff does not require more catheters or lubrication than he is currently receiving. (Dkt. 44, at ¶ 20). Dr. Johnson also opined that under a single-use program, plaintiff would require anywhere from four to six catheters per day, however, the four catheters that are currently being provided are more than adequate to safely meet plaintiff's needs. This is especially so, says Dr. Johnson, because plaintiff has had no current or previous complaints of urinary incontinence, the presence of which suggests a need for more frequent catheterization. (*Id*. at ¶ 20, n.6). In supplemental briefing, defendant Ryder notes that MDOC again revised its guidelines and plaintiff is currently being provided with four catheters and four packages of lubricating jelly per day, a determination made by the healthcare team at LCF. (Dkt. 43, at 3-4).

With respect to the individual elements of granting the relief that plaintiff seeks, defendants argue as follows: first, plaintiff is not at risk of suffering irreparable harm. Importantly, he is now receiving the amount of urological

9

supplies that he sought in his motion for preliminary injunction. Moreover,

plaintiff agrees that the supplies that he is receiving is adequate. Also, plaintiff

has no current symptoms of autonomic disreflexia and his medical providers have

provided evidence that his condition is being monitored. Defendants argue,

therefore, that plaintiff's motion is moot and plaintiff cannot establish irreparable

harm. Second, defendants contend that plaintiff is not likely to succeed on the

merits of his claim. Indeed, he is receiving medically appropriate medical supplies

for his condition. While plaintiff desires more supplies, he cannot demonstrate

that the supplies that have been given to him are inadequate. Also, there is no

evidence in the record that plaintiff suffers from autonomic disreflexia. At most,

plaintiff asserts a future disagreement over the amount of urological supplies he

will be provided, however, that is not a sufficient showing. For these reasons,

defendants contend that plaintiff fails to establish a strong likelihood of success on

the merits. Third, defendants claim that any intervention by the courts into the

management of a prison is prejudicial to that management and courts are not

inclined to interfere or second guess the provision of medical care. *See, e.g,*

*Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984) (noting that courts are

ill-equipped to deal with problems of prison administration and reform).

Defendants claim that medical providers within the prison system face unique

challenges and risks of practicing medicine within the correctional system and

should not be asked to exercise their medical judgment with the constant fear of interference by the judiciary. Indeed, if inmates are allowed to constantly challenge their medical decisions, that would severely impact the medical provider's ability to treat their patients. Fourth, defendants claim that there is no public interest served by judicial intervention here. Plaintiff is receiving appropriate care and the appropriate amount of urological supplies is being provided to him at this time. The public interest is better served by allowing medical providers to make independent, informed judgments based on their medical training and background and their personal observations and consultations with patients.

## IV.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

The availability of injunctive relief is a procedural question that is governed by federal law. *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98 (6th Cir. 1991). The Sixth Circuit has held that a court must consider four factors in deciding whether to issue a preliminary injunction:

> 1. whether the movant has established a substantial likelihood or probability of success on the merits;
>
> 2. whether the movant has demonstrated a threat of irreparable harm;
>
> 3. whether the issuance of a preliminary injunction

would cause substantial harm to others; and

4. whether the public interest is served by the issuance of an injunction.

*Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000), overruled on other grounds, *729, Inc. v. Kenton Co. Fiscal Court*, 515 F.3d 485 (6th Cir. 2008). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003), quoting *Michigan ler*, 257 F.3d 587, 592 (6th Cir. 2001). A plaintiff must always, however, show irreparable harm before a preliminary injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc*., 679 F.2d 100, 104 (6th Cir.1982).

With respect to the harm factor, the harm that would result in the absence of the injunction must be irreparable, not merely substantial. As the Supreme Court has noted, "[t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974), quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 924 (D.C. 1958). In short, "[a] plaintiff's harm from the

12

denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). In evaluating the harm facing the plaintiffs, the Court must evaluate three factors: "(1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided." *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

   B.   <u>Legal Analysis and Conclusions</u>

   To succeed on an Eighth Amendment claim, plaintiff must show that defendants were deliberately indifferent to the health or safety of the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "For injunctive relief, the plaintiff [ ] must show that the defendants were, at the time of the suit, "knowingly and unreasonably disregarding an objectively intolerable risk of harm and that they will continue to do so." *Laube v. Haley*, 234 F. Supp.2d 1227, 1242 (M.D. Ala. 2002), quoting *Farmer*, 511 U.S. at 846. Thus, it is not enough for plaintiff to merely show that defendants were, during the course of his treatment, deliberately indifferent to his medical needs. Rather, to be entitled to injunctive relief, plaintiff must also show that they continue to be deliberately indifferent, such that defendants' acts or omissions are likely to cause him future harm. *Rhinehart v. Scutt*, 2010 WL 3701788, at *5 (E.D. Mich. 2010). It is well-established that "[a] preliminary injunction cannot be issued based on past harm. The purpose of a

preliminary injunction is to prevent future irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997). With respect to plaintiff's general request for an injunction requiring defendants to provide him with continuing adequate urological supplies, the undersigned concludes that plaintiff has failed to establish a likelihood of success on a claim that his current treatment is deliberately indifferent.

When plaintiff filed his motion for preliminary injunction (Dkt. 15), defendants were issuing plaintiff seven, single-use only catheters and seven packets of lubricating jelly per week. Plaintiff claimed that any attempt to catheterize himself without the use of lubricating jelly was akin to torture. Plaintiff also claimed that as a result of not being able to empty his bladder more frequently, he was developing a serious medical condition known as "autonomic-disreflexia" resulting in the distention of his bladder. After plaintiff filed his motion for preliminary injunction, the court has been informed that MDOC has changed its policy regarding self-catheterization. Moreover, plaintiff's medical providers modified his medical protocol and he is now receiving four catheters and four packages of lubricating jelly per day. Plaintiff acknowledges in supplemental briefing to this court that this amount is adequate to meet his current medical needs. Plaintiff, however, is concerned that his medical protocol may change and he seeks injunctive relief to maintain the status quo. Although the

14

court acknowledges that, at the time plaintiff filed his initial motion, his medical

protocol may have resulted in the imposition of a preliminary injunction, a

question the court does not answer here, because MDOC has modified plaintiff's

medical protocol to such an extent that even plaintiff feels that his urological

needs are being adequately met, the undersigned recommends the denial of the

motion for preliminary injunction now.

The undersigned notes that the recommendation of denial of the motion is

conditional on plaintiff's medical protocol remaining the same as it was presented

to the court in the parties' supplemental briefing, namely that plaintiff is receiving

four catheters and four packages of lubricating jelly per day. Should this protocol

change, plaintiff's motion for preliminary injunction would be subject to

reconsideration by the court.

## V.    RECOMMENDATION

Based on the foregoing, and subject to the above conditions, the

undersigned **RECOMMENDS** that plaintiff's motion for preliminary injunction

(Dkt. 15) be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985);

*Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing

objections that raise some issues but fail to raise others with specificity will not

preserve all the objections a party might have to this Report and Recommendation.

*Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991);

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.

1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this

Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: November 25, 2015          s/Michael Hluchaniuk
                                 Michael Hluchaniuk
                                 United States Magistrate Judge

16

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on <u>November 25, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: <u>Christopher Imelmann, #254339, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.</u>

                                     <u>s/Tammy Hallwood</u>
                                     Case Manager
                                     (810) 341-7887
                                     tammy_hallwood@mied.uscourts.gov