UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER IMELMANN,                    Case No. 15-10343

    Plaintiff,                Mark A. Goldsmith
v.                                       United States District Judge

CORIZON, INC., *et al.*,                  Michael Hluchaniuk
                                         United States Magistrate Judge
    Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT RYDER'S MOTION FOR SUMMARY JUDGMENT (Dkt. 21)

## I.  PROCEDURAL HISTORY

On January 26, 2015, plaintiff Christopher Imelmann, a state prisoner currently housed at the Lakeland Correctional Facility in Coldwater, Michigan, acting *pro se*, filed a Complaint seeking injunctive and monetary relief alleging that defendants, including nurse Rhonda Ryder, discriminated against him in violation of Title II of the Americans With Disabilities Act and subjected him to cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.

On May 27, 2015, MDOC defendant Rhonda Ryder filed a motion for summary judgment under Fed. R. Civ. P. 56, asking the court to enter an order dismissing plaintiff's complaint against her because he did not properly exhaust

his administrative remedies as to her.  (Dkt. 21).  Plaintiff filed a response on July

13, 2015.  (Dkt. 29).  Defendant Ryder filed a reply brief on July 22, 2015.  (Dkt.

31).  The motion is now ready for report and recommendation.

   For the reasons stated below, the court **RECOMMENDS** that defendant

Ryder's  motion for summary judgment (Dkt. 21) be **GRANTED** and that

plaintiff's complaint as to defendant Ryder be **DISMISSED WITHOUT**

**PREJUDICE** for failure to exhaust administrative remedies.

## II.   FACTUAL BACKGROUND

   On November 24, 2015, the undersigned issued a report and

recommendation on plaintiff's motion for preliminary injunctive relief.  (Dkt. 53).

In that R&R, the court provided a comprehensive factual background of the issues

that underlie plaintiff's claims against defendants, including defendant Ryder, as

they relate to their failure to supply him with the necessary urological supplies,

including catheters and lubricating jelly.  (Dkt. 1, at Pg. ID 4, 9-12).  The court

therefore will not restate the factual history, but directs the parties to Dkt. 53, at

Pg. ID 403-407.

## III.   PARTIES' ARGUMENTS

   A.   Defendant Ryder

   Defendant Ryder moves for summary judgment on grounds that plaintiff

failed to properly exhaust his administrative remedies regarding the issues raised

in the Complaint as to her.  (Dkt. 21, at 11).  Ryder contends that plaintiff has filed

six Step III grievance appeals while incarcerated at LCF.  Only one of those

grievances, LCF-13-02-0164-12il, concerned his inability to receive lubricating

jelly.  (*Id*.)  Ryder argues that nowhere in his Step I grievance does plaintiff name

Ryder despite the requirement that he name all of those involved in the issues

being grieved to be included.  Indeed, "[u]nder the Department of Corrections'

procedural rules, inmates must include the '[d]ates, times, places and names of all

those involved in the issue being grieved' in their initial grievance." *Reed-Bey v.*

*Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); s*ee, also Burton v. Jones*, 321

F.3d 569, 574 (6th Cir. 2003) (A prisoner did not properly exhaust his claim

against a prison official "if the first allegation of mistreatment or misconduct on

the part of that official is made at Step II or Step III of the grievance process. ...").

Ryder also claims that plaintiff has not exhausted his administrative

remedies because he did not follow the procedure of filing a Step III grievance

appeal prior to filing this lawsuit.  *Jones v. Bock* reiterated the requirement of

*Woodford*, that "to properly exhaust administrative remedies, prisoners must

'complete the administrative review process in accordance with the applicable

procedural rules,' rules that are defined not by the PLRA, but by the prison

grievance process itself." *Jones*, 549 U.S. at 218 (internal citation omitted).  For

these reasons, Ryder asks the court for summary judgment.

3

B.   Plaintiff's Response

In response, plaintiff concedes that he did not name Ryder in Step I

grievance (LCF-13-02-0164-12i1) about the inability to receive lubricating jelly,

as required by MDOC policy.  (Dkt. 29, at 4).  Plaintiff, however, argues that he

did file another grievance (LCF 2013-11-1251-12e4) where he did name Ryder.

(*Id*; citing Dkt. 21, at Pg. ID 160).  In this grievance, plaintiff claims that Ryder

attempted to hand plaintiff two "single-use only" catheters and seven "single-use

only" packets of lubricating jelly.  Plaintiff asked Ryder if he could have a bag to

secure his urological supplies as it took plaintiff two hands to maneuver his

wheelchair.  (*Id*.)  At this point, plaintiff argues that Ryder began yelling at him

and charted and falsified the events onto plaintiff's electronic medical record

(EMR).  Plaintiff alleged that Ryder falsely accused him of refusing his urological

supplies in retaliation for complaining about being denied the proper amount of

supplies.  (*Id*.)  The Step I response indicated that Health Services would ensure

that paper bags would be kept on hand and that the grievance was resolved.  (*Id*.)

Plaintiff, however, appealed to Step II.  (Dkt. 21-3, at Pg. ID 159).  Plaintiff

indicated that the grievance was not resolved because his EMR had not been

corrected.  The Step II response was that Nurse Parrish was not available for

interview and that it was unknown what entry in the EMR had been fabricated.

(*Id*.)  Plaintiff appealed to Step III.   (Dkt. 21-3, at Pg. ID 158).  Plaintiff again

claimed that the false entry needed to be removed, which was also denied.  (*Id*. at

157).  Plaintiff submits that he has exhausted his administrative remedies as to this

grievance and, therefore, defendant's motion should be denied.

        C.     <u>Ryder's Reply</u>

In reply, Ryder points out that plaintiff concedes that he did not name her in

grievance LCF 13-02-0164-12i1 about his inability to receive lubricating jelly for

catheters, as required by MDOC policy.  (Dkt. 31, at 1).  With respect to the

grievance that plaintiff does name Ryder, LCF 13-11-1251-12e4, plaintiff

complained that when Ryder attempted to hand him his medical supplies, he

requested a bag in which to put them.  Plaintiff alleged in the grievance that Ryder

charted a "fabrication" of the events surrounding this incident in his medical file.

(Dkt. 21-3, at Pg. ID 160).  Ryder contends that plaintiff has not made any

allegations in his complaint where plaintiff has raised these issues.  Because these

facts are not at issue in this litigation, Ryder avers that whether or not plaintiff

properly exhausted his administrative remedies as to grievance LCF 13-11-1251-

12e4 is irrelevant.

## IV.   LEGAL ANALYSIS & CONCLUSIONS

      A.     <u>Standard of Review</u>

Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

*Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for

determining whether summary judgment is appropriate is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *State Farm Fire &*

*Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and

all reasonable inferences must be construed in the light most favorable to the non-

moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the

party opposing a motion for summary judgment must make an affirmative showing

with proper evidence and must "designate specific facts in affidavits, depositions,

or other factual material showing 'evidence on which the jury could reasonably

find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477

U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the

non-moving party.  *Anderson*, 477 U.S. at 248, 251.

    B.    <u>Legal Analysis</u>

    The issue presented is whether plaintiff properly exhausted his claims as to

Ryder before filing any claims he had against her.

    42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  Section 1997e(a)'s

"exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct.

983, 152 L. Ed. 2d 12 (2002).  "[T]he PLRA's exhaustion requirement applies to

all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other

wrong."   *Porter*, 534 U.S. at 532.  In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910,

166 L. Ed. 2d 798 (2007), the Supreme Court held that failure to exhaust is an

affirmative defense under the PLRA, and "inmates are not required to specially

plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. App'x. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants."). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative

8

defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Here, pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits. (Dkt. 21-2). First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted verbal resolution. If the prisoner is not satisfied with the Step I outcome, he must request a Step II appeal form within five days, and he then has an additional five days to file the Step II appeal. If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days. The Step III response ends the administrative process.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved, and must also include the "[d]ates,

times, places, and names of all those involved in the issue being grieved." (Dkt. 11-2). A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant. (*Id*. ¶ G1). A grievance may also be rejected if the grievance is untimely. (*Id*. ¶ G4).

The undersigned agrees with Ryder that plaintiff has failed to exhaust his administrative remedies as to her for the following reasons.  In plaintiff's Step I grievance, he states that he attempted to resolve the issue prior to writing his grievance on February 5, 2013.  (Dkt. 21-3, at Pg ID 165).  Specifically, he alleges that he tried to speak with Nurse Crinion who advised him that she would be "tased" if she dispensed any lubricating jelly to him "P.R.N." (as needed), or as the medical order was written.  (*Id*.)  Further, plaintiff averred that Nurse Crinion indicated that she had a memo from HUM Smith and HIM Curtis "forbidding" the distribution of the lubricating jelly.  (*Id*.)

The undersigned finds significant the fact that none of plaintiff's grievances name Nurse Ryder with respect to the issues alleged in his complaint–namely his inability to receive lubricating jelly.  Importantly, plaintiff concedes that he did not name Nurse Ryder in grievance ID# LCF-13-02-0164012i1.  (Dkt. 29, at 4).  And, this is the only grievance that concerns plaintiff's ability to receive lubricating jelly–the subject of plaintiff's Complaint allegations.  The undersigned

acknowledges that when a plaintiff may not have specifically named all of the defendants or described all of the specific claims in the initial grievance, where the grievance was considered on the merits, a plaintiff has properly exhausted the required administrative remedies prior to filing a lawsuit. *Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010), citing *Jones*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798, citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006). However, in the view of the undersigned, plaintiff's claims against Ryder are not exhausted because plaintiff, despite the accounts given in his initial grievance and subsequent appeals, never mentioned the alleged role of Ryder. This despite the fact that plaintiff was aware of Ryder as acknowledged by the factual history in his complaint. (Dkt. 1, Pg. ID 4, 9-12). While plaintiff mentioned "health-care" generally, his grievance was very specific in identifying defendant health information manager (HIM) Sharon Curtis and registered nurse Dorene Smith as the alleged wrongdoers. (Dkt. 21-3). In fact, plaintiff alleged in his Step I grievance that "HIM Curtis and HUM Smith are being deliberately indifferent to my medical needs, and are intentionally interfering with lawful medical orders written by a medical doctor. . . . *There are no health professionals other than HIM Curtis and HUM Smith*, that would deem the use of a catheter, without lubricating jelly appropriate, nor would anyone attempt to catheterize a patient without lubricating jelly." (*Id*.) (emphasis added).

11

Considering the above, the undersigned concludes that nothing in the grievance or subsequent appeals would have put the facility on notice that plaintiff's grievance involved any action or inaction by Nurse Ryder. This case is very similar to *Vandiver v. Vasbinder*, 2012 WL 4355536, *1 (E.D. Mich. 2012), in which the court concluded that the plaintiff had failed to exhaust his administrative remedies as to a particular defendant not identified in the grievance because plaintiff had specifically identified other defendants by name and nothing in the grievance would have given notice as to an additional defendant. In that case, identifying "MDOC", "CMS", and the "State of Michigan"did not save the plaintiff's claim from being deemed unexhausted. Rather, the court concluded that "[e]ven the broadest readings of these grievances provides no basis affording notice that [the defendant's] involvement is at issue." *Id.* at *2. For these reasons, the undersigned concludes that defendant Ryder's motion to dismiss based on plaintiff's failure to exhaust should be granted.

Plaintiff additionally contends that while grievance LCF-13-02-0164012i1 may not contain Nurse Ryder's name, he filed another grievance that does, LCF-2013-11-1251-12e4. However, undersigned agrees with Ryder that this grievance does not identify any issues which are the subject of this litigation. Specifically, in Step I of this grievance, plaintiff alleges:

On or about September 16, 2013 at approximately 1300

12

hrs., I had an encounter with Rhonda Ryder RN, while obtaining urethral catheter supplies. Nurse Ryder attempted to hand me seven "single use" packets of lubricating jelly, and two "single use only" catheters. I asked her if she "had a bag for them" as they were loose and not secured. I explained to her, that I did "did not want to chase them down the hallway", because they will not stay on my lap. All of the other nurses either put them in a bag, or secure them with rubber bands. In fact Nurse Parrish had told Ryder to secure them, but she chose not to. Nurse Ryder then began yelling at me, for no apparent reason. Nurse Ryder is often "unprofessional, disrespectful, and demeaning", when dealing with me. This entire incident was overheard by nurse Parrish, who was in the immediate area. At no time have I been disrespectful or impolite to any of the health care staff. Nurse Ryder charted a "complete fabrication" of the events aforementioned. In fact nurse Parrish advised HUM-Bussell, that the events charted by Ryder never occurred. However to date these "false allegations" remain on my EMR. I want these false allegations removed from my EMR. Nurse Ryder's actions are in direct violation of P.D. 02.03.107, and P.D. attachment 02.03.100A, No. (1), (3), (5), (32), and (47). Upon information and belief, Ryder is falsifying my EMR, in retaliation for past grievances filed against her.

(Dkt. 21-3, at Pg. ID 160).

Comparing these allegations to those in plaintiff's complaint, the court concludes that the issues set forth in grievance LCF-2013-11-1251-12e4 have not been pursued in the complaint. As such, the court agrees with defendant Ryder that whether plaintiff exhausted his claims on this grievance is irrelevant. For all of the above reasons, the Court concludes that defendant Ryder is entitled to

13

judgment as a matter of law.

## V.    RECOMMENDATION

For the above stated reasons, the court **RECOMMENDS** that defendant Ryder's  motion for summary judgment (Dkt. 21) be **GRANTED** and that plaintiff's Complaint as to defendant Ryder be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs*., 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 16, 2015                       s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on <u>December 16, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: <u>Christopher Imelmann, #254339, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.</u>

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov