UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER IMELMANN,                    Case No. 15-10343

            Plaintiff,                   Mark A. Goldsmith
v.                                       United States District Judge

CORIZON, INC., *et al.*,                 Stephanie Dawkins Davis
                                         United States Magistrate Judge
            Defendants.
_____/

**REPORT AND RECOMMENDATION
GRANTING DEFENDANT CORIZON HEALTH, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (Dkt. 68); GRANTING SHARON
CURTIS' MOTION FOR SUMMARY JUDGMENT (Dkt. 71); GRANTING
IN PART AND DENYING IN PART DORENE SMITH'S MOTION FOR
SUMMARY JUDGMENT (Dkt. 77); AND DENYING PLAINTIFF'S
MOTION FOR DECLARATORY JUDGMENT (Dkt. 66)**

## I.    PROCEDURAL HISTORY

On January 26, 2015, plaintiff Christopher Imelmann, a state prisoner

currently housed at the Lakeland Correctional Facility in Coldwater, Michigan,

acting *pro se*, filed a Complaint seeking injunctive and monetary relief alleging

that defendants discriminated against him in violation of Title II of the Americans

With Disabilities Act and subjected him to cruel and unusual punishment in

violation of the Eighth Amendment of the U.S. Constitution.

On January 26, 2016, plaintiff filed a motion for declaratory judgment

seeking a ruling on the applicability of Michigan's "single-use" statute, Mich.

1

Comp. Laws. § 333.20153. (Dkt. 66). The MDOC defendants responded on February 5, 2016 (Dkt. 73), and Corizon responded on February 12, 2016 (Dkt. 75). Plaintiff filed a reply brief. (Dkt. 79). On February 4, 2016, Corizon Health, Inc. filed a motion for partial summary judgment based solely on the failure to exhaust (Dkt. 68), and plaintiff responded. On February 5, 2016, defendant Sharon Curtis filed a motion for summary judgment. (Dkt. 71). On February 22, 2016, defendant Dorene J. Smith filed a motion for summary judgment. (Dkt. 77). With permission of the court, plaintiff filed a single response brief to all three motions for summary judgment. (Dkt. 85). The motions are now ready for report and recommendation.

For the reasons stated below, the court **RECOMMENDS** that defendant Corizon Health, Inc.'s  motion for partial summary judgment (Dkt. 68) be **GRANTED** and that plaintiff's claim regarding the amount of catheters and lubricating jelly provided to him for urethral catheterization be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

The court also **RECOMMENDS** that defendant Sharon Curtis' motion for summary judgment (Dkt. 71) be **GRANTED** and that defendant Curtis be dismissed with prejudice.

 The court further **RECOMMENDS** that defendant Dorene J. Smith's motion for summary judgment (Dkt. 77) be **GRANTED IN PART AND**

2

**DENIED IN PART** and that defendant Smith be dismissed with prejudice.

Finally, the court **RECOMMENDS** that plaintiff's motion for declaratory judgment (Dkt. 66) be **DENIED** as moot.

## II.    FACTUAL BACKGROUND

Plaintiff raises two primary issues in his civil rights complaint.  First, plaintiff alleges that defendants failed to provide him with a referral for an outside consultation with a neurosurgeon who could have corrected a broken instrumentation in his spine.  (Dkt. 1, at 3).  And, second, plaintiff alleges that defendants failed to supply him with the necessary urological supplies, including catheters and lubricating jelly.  (*Id*. at 4).  Plaintiff claims that defendants acted in violation of Title II of the Americans with Disabilities Act and the Eighth Amendment to the U.S. Constitution.  (*Id*. at 5).  Only the second issue is germane to the court's disposition of the motions  currently pending; therefore, the undersigned will only focus on the factual background relevant to that issue.

Plaintiff claims that he is forced to use a urethral catheter in order to empty his bladder because a spinal cord injury that occurred in 1985 which left him an "incomplete" (T-12) paraplegic.  (Dkt. 1, at ¶ 25).  Plaintiff alleges that he has been using a catheter to empty his bladder since his spinal cord injury.  (*Id*.)  As a result, plaintiff claims that it is difficult to insert a catheter because scar tissue has built-up in his urethra over time.  (*Id*.)

On September 20, 2012, plaintiff was transferred from the Woodland Center Correctional Facility (WCCF) to Lakeland Correctional Facility (LCF) where he was placed in the medical unit. (*Id*. ¶ 26). Plaintiff asserts that on January 24, 2013, he was seen by Dr. Kenneth Jordan for a chronic care visit. During this visit, plaintiff indicates that he advised Dr. Jordan that the nurses at LCF were refusing to dispense lubricating jelly with his urethral catheter supplies. (*Id*.) Plaintiff alleges that Dr. Jordan specified "K-Y Jelly" on plaintiff's special accommodation notice. (*Id*.) However, the nurses at LCF persisted in not providing the lubricating jelly. Plaintiff avers that Dr. Jordan then wrote a prescription for the lubricating jelly and forwarded that order to the regional medical officer (RMO) for approval. (*Id*.) Plaintiff alleges that the RMO approved Dr. Jordan's request; however, the LCF nurses still refused to provide the lubricating jelly. (*Id*. ¶ 27). Plaintiff alleges that on at least two separate occasions defendant nurses Smith and Ryder told plaintiff to "use tap-water, it won't kill you." (*Id*.) Plaintiff argues that catheterizing without the use of lubricating jelly is akin to being tortured, and was impossible because of the scar tissue in plaintiff's urethra. Plaintiff further avers that defendant's health information manager, Sharon Curtis, and registered nurse, Dorene Smith, had circulated a memo forbidding the dispensing of lubricating jelly for any reason. (*Id*.)

On February 5, 2013, plaintiff filed a grievance (LCF-13-02-0164-12i1) concerning the nursing staff at LCF and their refusal to dispense lubricating jelly with his urethral catheter supplies despite having Dr. Jordan's prescription and RMO approval. (*Id*. at ¶ 28). The grievance was summarized by registered nurse Joy Parish as follows:

> Mr. Imelmann came to health care had an encounter with a new nurse at LCF that was following DOC's policies, she did not have access to his health record therefore she followed the policy and did not dispense the lubricating jelly. Mr. Imelmann has since been issued the supplies he needs and this issue has been resolved. Mr. Imelmann has been provided with a copy of the updated accommodation, therefore in the future, should he encounter new staff and this issue arise again, he can show them the accommodation. This issue is considered resolved.

(Dkt. 1 ¶ 29). Plaintiff claims that every staff member within the MDOC has access to every prisoner's health care information on the EMR. Moreover, plaintiff claims that he asked nurse Crinion if she would ever catheterize a patient without using lubricating jelly and she replied, "hell no." Plaintiff also asked nurse Parish and defendant Smith to see the policy that forbids the dispensing of lubricating jelly, or the policy number, but both declined plaintiff's request.

Plaintiff appealed the grievance resolution disputing that it had been resolved. (Dkt. 1 ¶ 32). At the time of the appeal, plaintiff was being issued seven single-use packets of lubricating jelly per week and seven single-use catheters per

5

week.  (*Id.*)  Later, Plaintiff claims that the number was changed to two per week. According to plaintiff, the provision of supplies at that level limited him to emptying his bladder only one time per day.  (*Id.*)  It also forced plaintiff to re-use contaminated catheters.  (*Id.*)  Plaintiff claimed that this practice contravenes the manufacturer's labeling which states that they are intended for "single-use only," and is also discriminatory to him based on his disability status.  (*Id.*)

The response to the grievance indicates that an infection control manual was approved by the chief medical officer with instructions for clean intermittent self-catheterization.  (Dkt. 1 ¶ 33).  "Prisoners requiring Equipment for intermittent self-catheterization shall be provided the following items: Two catheters each week, antibacterial bar soap, one small biohazard waste bag, one small disposable basin for continuous use to clean catheter (do not replace every week or month) . . . ."  (*Id.*)  Plaintiff claims that the response did not contain any mention of lubricating jelly.  (*Id.*)

Plaintiff alleges that Corizon was unwilling to provide him with 4-6 catheters per day, which is the medical community standard for intermittent self-catheterization.  (*Id.* ¶ 34).  Plaintiff explains that prior to his transfer to LCF, he had no problem obtaining the urological supplies that he needed to self-catheterize.  (*Id.* ¶ 35).  Without the required supplies, plaintiff claims that he developed a condition unique to persons with spinal cord injuries called

autonomic-disreflexia, a potentially fatal condition, caused by substantial amounts of urine in the bladder.   (*Id*. ¶ 37).

On or around September 3, 2015, a meeting occurred between LCF Health Unit Manager (HUM) Betsy Roberts-Spearman, PA Margaret Ouellette, and plaintiff's primary physician, Dr. Oliver Johnston, to determine how many catheters plaintiff required.  (Dkt. 43, at 2-3).  Based on plaintiff's daily routine, activity and sleep cycle, it was determined that plaintiff would need to self-catheter every four to six hours.  (*Id*. at 3).  As such, starting on September 15, 2015, defendants started providing plaintiff with four catheters and two lubricating jelly packets on a daily basis.  (Ex. A, ¶ 6).  HUM Roberts-Spearman met with plaintiff on September 14, 2015 and explained that MDOC was changing the guidelines regarding self-catheters, and his resulting new protocol.  (*Id*., ¶ 7).  Later, MDOC again revised its guidelines and plaintiff began receiving four catheters and four lubricating jelly packets on a daily basis.  (Dkt. 43, at 3-4).

## III.   PARTIES' ARGUMENTS

### A.   Corizon Health, Inc.

Defendant Corizon Health, Inc. moves for partial summary judgment on grounds that plaintiff failed to properly exhaust his administrative remedies regarding the amount of lubricant and catheters being supplied to him for urethral

catheterization.[1]  (Dkt. 68).  As set forth in now-dismissed MDOC defendant

Rhonda Ryder's motion for summary judgment, only one of plaintiff's grievances,

LCF-13-02-0164-12il, concerns a claim regarding the amount of lubricating jelly

and catheters provided to him.  (*Id*.)  Moreover, nowhere in the Step I grievance

does plaintiff name Corizon despite the requirement that he name all of those

involved in the issues being grieved to be included.  Corizon notes that plaintiff

references "Dr. Jordan", however, he does not make any complaints regarding the

care provided by Dr. Jordan, or any other Corizon employee.

Corizon specifically indicates that a review of the relevant grievance, LCF-

13-02-0164-12il, shows that plaintiff did not complain about the care he received

from Corizon or any Corizon employee for his claim relating to the number of

catheters and lubricating jelly packs provided to him.  (Dkt. 21-3, Pg ID 165).

Instead, the nurses who plaintiff identified in the grievance (nurses Smith and

Curtis) are employed by MDOC, as evidenced by the fact that they are represented

by the Michigan Department of Attorney General.  *See, e.g., Minor v. Bunting*,

2012 WL 4385754, *1 (E.D. Mich. Aug. 2, 2012) (defendant nurses employed by

MDOC and represented by attorney general's office).

Because plaintiff did not complain about the care of Corizon or any Corizon

---

[1]  Corizon Health specifically states that its motion is limited to plaintiff's claim regarding the amount of catheters and lubricant provided to him for urethral catheterization and that it will address plaintiff's remaining claims separately.  (Dkt. 68, Pg ID 527).

employee in grievance LCF-13-02-0164-12il, Corizon Health, Inc. says that
nothing would have put it on notice that plaintiff's grievance involved any action
or inaction by Corizon or any of its employees.  Plaintiff therefore failed to
exhaust administrative remedies as to his claim regarding the number of catheters
and lubricating jelly packets provided to him as raised against Corizon in his
complaint and those unexhausted claims should be dismissed.  *See Jones*, 549 U.S.
at 218.

Plaintiff requested and was granted permission to file a combined response
to all of the pending motions for summary judgment; however, in his response
brief, plaintiff did not provide any counter to Corizon's motion (Dkt. 68)
regarding his failure to exhaust.

B.    Sharon Curtis

MDOC Defendant, Sharon Curtis moves for summary judgment arguing
that plaintiff has failed to show a violation of the Eighth Amendment, and that she
is entitled to Eleventh Amendment and qualified immunities.  (Dkt. 71).  For
purposes of her motion, Curtis assumes that plaintiff satisfies the objective
component of the Eighth Amendment inquiry, namely that plaintiff's need for
lubricating jelly is associated with a serious medical need, but argues that plaintiff
cannot show that he meets the subjective test, that she was "deliberately
indifferent" to plaintiff's serious medical need.  Specifically, Curtis argues that

9

plaintiff has not made any factual allegations showing that she possessed a sufficiently culpable state of mind; that her treatment was tantamount to an intent to punish. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), *cert. denied*, 489 U.S. 1068 (1989).

Plaintiff argues that his complaint allegations against Curtis state an Eighth Amendment claim as he advised Dr. Jordan that the nurses at LCF were refusing to dispense the lubricating jelly according to his prescription. Even with more specification from Dr. Jordan, the nurses continued to refuse to issue the lubricating jelly. Then, Dr. Jordan wrote a prescription for lubricating jelly and forwarded the order to the regional medical officer for approval. Approval was granted on January 24, 2013, yet the nursing staff at LCF still refused to dispense the lubricating jelly. Plaintiff claims that it was not until he filed this Section 1983 action that defendants modified their policy of issuing two catheters and seven packets of lubricating jelly per week. Plaintiff indicates that while he may not be able to sustain an Eighth Amendment claim now, it is only because defendants corrected their policy after three years of torture. Plaintiff argues that Curtis is not entitled to qualified immunity because she had a duty to administer Dr. Jordan's prescription and complying with a doctor's prescription or treatment plan is a ministerial function, not a discretionary one. *Estate of Burks v. Ross*, 438 F.2d 230, 235 (6th Cir. 1971).

10

C.    Dorene Smith

Defendant Dorene Smith moves for summary judgment arguing that

plaintiff failed to exhaust administrative remedies for his complaint allegations

regarding a statement that nurse Smith made.  (Dkt. 77).  Specifically, Smith

argues that while plaintiff did complain in Grievance LCF-13-02-0164-12il that

Smith had circulated a memo forbidding the dispensing of lubricating jelly for any

reason, nowhere in plaintiff's Step I grievance does plaintiff also claim that Smith

told him to "use tap water, it won't kill you."  (Dkt. 21-3, Pg ID 162-69).  Similar

to defendant Curtis, defendant Smith also moves for summary judgment arguing

that plaintiff has failed to show a violation of the Eighth Amendment, and that she

is entitled to Eleventh Amendment and qualified immunities.  (*Id*.)

IV.    **LEGAL ANALYSIS AND CONCLUSIONS**

A.    Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

*Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for

determining whether summary judgment is appropriate is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *State Farm Fire &*
*Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v.*
*Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).  Furthermore, the evidence and
all reasonable inferences must be construed in the light most favorable to the non-
moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S.
574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,
the burden of demonstrating the existence of such an issue shifts to the non-
moving party to come forward with "specific facts showing that there is a genuine
issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the
party opposing a motion for summary judgment must make an affirmative showing
with proper evidence and must "designate specific facts in affidavits, depositions,
or other factual material showing 'evidence on which the jury could reasonably
find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).
In order to fulfill this burden, the non-moving party need only demonstrate the
minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477
U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).
However, mere allegations or denials in the non-movant's pleadings will not
satisfy this burden, nor will a mere scintilla of evidence supporting the
non-moving party.  *Anderson*, 477 U.S. at 248, 251.

12

B. <u>Legal Analysis</u>

1. Exhaustion

Corizon Health, Inc. argues that plaintiff failed to exhaust his claims regarding the amount of catheters and lubricating jelly provided to him as raised against Corizon in his complaint. (Dkt. 68). Defendant Dorene Smith argues that plaintiff failed to exhaust as to his complaint allegations regarding her allegedly telling plaintiff to "use tap-water, it won't kill you" as they were never grieved by plaintiff. (Dkt. 21-3, Pg ID 162-169).

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007), the Supreme Court held that failure to exhaust is an affirmative defense under the PLRA, and "inmates are not required to specially plead or

13

demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. App'x. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants."). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative

14

defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Here, pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits.  (Dkt. 21-2).  First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue.  If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted verbal resolution. If the prisoner is not satisfied with the Step I outcome, he must request a Step II appeal form within five days, and he then has an additional five days to file the Step II appeal. If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days. The Step III response ends the administrative process.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved, and must also include the "[d]ates,

15

times, places, and names of all those involved in the issue being grieved." (Dkt.
21-2). A grievance may be rejected if it is vague, illegible, contains multiple
unrelated issues, or raises issues that are duplicative of those raised in another
grievance filed by the grievant. (*Id*. ¶ G1). A grievance may also be rejected if the
grievance is untimely. (*Id*. ¶ G4).

The undersigned agrees with Corizon that plaintiff has failed to exhaust his
administrative remedies as to his claim challenging the number of catheters and
lubricating jelly packets provided to him. Significantly, none of plaintiff's
grievances that complain of the insufficient provision of catheters and lubricating
jelly name Corizon. Further, while Corizon acknowledges that the grievance
names Dr. Jordan, the grievance does not allege that Dr. Jordan or Corizon did
anything wrong. It is true that even when a plaintiff has not specifically named all
of the defendants or described all of the specific claims in the initial grievance, if
the grievance was considered on the merits, a plaintiff may be considered to have
properly exhausted the required administrative remedies prior to filing a lawsuit.
*Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010), citing *Jones*, 549
U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798, citing *Johnson v. Johnson*, 385 F.3d
503, 522 (5th Cir. 2006). However, in the view of the undersigned, plaintiff's
claim regarding the insufficient provision of catheters and lubricating jelly against
Corizon is not exhausted because plaintiff, despite the accounts given in his initial

16

grievance and subsequent appeals, never mentioned the alleged role of Corizon or its employees sufficient to put them on adequate notice of his grievance as to them. While plaintiff mentioned "health-care" generally, his grievance was very specific in identifying defendant health information manager (HIM) Sharon Curtis and registered nurse Dorene Smith as the alleged wrongdoers. (Dkt. 21-3). In fact, plaintiff alleged in his Step I grievance that "HIM Curtis and HUM Smith are being deliberately indifferent to my medical needs, and are intentionally interfering with lawful medical orders written by a medical doctor. . . . *There are no health professionals other than HIM Curtis and HUM Smith*, that would deem the use of a catheter, without lubricating jelly appropriate, nor would anyone attempt to catheterize a patient without lubricating jelly." (*Id*.) (emphasis added).

Considering the above, the undersigned concludes that plaintiff's claim against Corizon Health, Inc. regarding the adequacy of the number of catheters and lubricating jelly packets provided to him for urethral catheterization was not exhausted and that claim should be dismissed without prejudice.

Regarding Defendant Smith, she asks the court to find that plaintiff did not exhaust his claim that Smith allegedly told him to "use tap-water, it won't kill you." Essentially, Smith suggests that because plaintiff did not raise this specific allegation in step I of the grievance process, he failed to exhaust his administrative remedies as to this specific claim. This court disagrees. The court does not see

17

the statement as a separate claim, but rather as a factual allegation advanced by plaintiff in support of his broader claim made against Smith in Grievance LCF-13-02-0164-12il, namely, nurses Smith and Curtis' alleged failure to provide lubricating jelly with his catheters.  (Dkt. 21-3, Pg ID 165).  The alleged statement would necessarily be reviewed during the grievance process as it directly relates to the allegations made in Grievance LCF-13-02-0164-12il.  This being the case, the undersigned concludes that plaintiff had no independent obligation to "exhaust" as it relates specifically to the alleged statement.  Therefore, defendant Smith's argument fails.

 B. <u>Eighth Amendment</u>

 Defendants Sharon Curtis and Dorene Smith both argue that they are entitled to summary judgment on plaintiff's Eighth Amendment claim because plaintiff has failed to show that they possessed a sufficiently culpable state of mind in allegedly depriving him of appropriate and sufficient medical care.

 In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize

claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are

19

'serious.'" *Id.* at 9.   For purposes of their motions, defendants Curtis and Smith do not challenge that plaintiff's medical condition is sufficiently serious. Therefore, the court will only analyze whether plaintiff has shown that defendants Smith's and Curtis' conduct satisfied the subjective component of the Eighth Amendment inquiry.

The subjective component requires that a defendant act with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834.   To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837.   In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (*citing Farmer*, 511 U.S. at 839-40).   "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical

20

staff, the plaintiff fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued plaintiff's previous course of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. Feb. 28, 2010) (plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by,* 2010 WL 1657690 (E.D. Mich. Apr. 22, 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested). Thus, "[w]hen a prison doctor

provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

The law is clear where a prisoner is provided with treatment, the fact that he is not provided with the best possible treatment, or treatment that plaintiff disagrees with, does not make the course selected unacceptable or unconstitutional. The amount of catheters and lubricating jelly that Curtis and Smith dispensed to plaintiff, while apparently not optimal, were within the range approved by the chief medical officer in the infection control manual. Thus, the undersigned concludes that plaintiff has not shown that nurses Curtis or Smith were deliberately indifferent to his medical needs by providing treatment that was within the approved range.

Because the undersigned has concluded that Curtis and Smith did not violate plaintiff's constitutional rights, it is not necessary to determine whether they are entitled to immunity. It is further not necessary to determine whether plaintiff exhausted his administrative remedies as to defendant Smith.

3.    Declaratory Judgment

Plaintiff moves this court for a declaratory judgment requesting a ruling on the applicability of Michigan's "single-use" statute, Mich .Comp. Laws.

22

§ 333.20153.  (Dkt. 66).  The statute defines "single-use device" as "a medical device that is intended for 1 use or procedure on a human patient, including any device marked 'single-use device.'"  (*Id*.)  Plaintiff contends that a judgment declaring the existence or nonexistence of his rights under the statute will resolve the dispute.  Because the undersigned has dismissed plaintiff's claims regarding his receipt of an appropriate number of catheters from defendants (including previously dismissed defendants), any determination on the applicability of Michigan's "single-use" statute has been rendered moot. Moreover, this court notes that the undersigned would in any case likely decline to exercise jurisdiction over this issue because Michigan courts have not yet opined on the specific issue raised by plaintiff, i.e., the applicability of the statute to MDOC's policy for clean intermittent self-catheterization.  Indeed, the Sixth Circuit has cautioned: "[a] district court would be wise to decline jurisdiction if a declaratory judgment action involved novel, unsettled, or complex issues of state law." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014).

## V.     RECOMMENDATION

For the above-stated reasons, the court **RECOMMENDS** that defendant Corizon Health, Inc.'s  motion for partial summary judgment (Dkt. 68) be **GRANTED** and that plaintiff's claim regarding the amount of catheters and lubricating jelly provided to him for urethral catheterization be **DISMISSED**

**WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

The court also **RECOMMENDS** that defendant Sharon Curtis' motion for summary judgment (Dkt. 71) be **GRANTED** and that defendant Curtis be dismissed with prejudice.

The court further **RECOMMENDS** that defendant Dorene J. Smith's motion for summary judgment (Dkt. 77) be **GRANTED IN PART AND DENIED IN PART** as moot and that defendant Smith be dismissed with prejudice.

Finally, the court **RECOMMENDS** that plaintiff's motion for declaratory judgment (Dkt. 66) be **DENIED** as moot.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs*., 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.

24

1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 10, 2016                   s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>August 10, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: <u>Christopher Imelmann, #254339, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.</u>

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

26