UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER IMELMANN,

        Plaintiff,                       Case No. 15-10343
                                                  Hon. Mark A. Goldsmith
vs.

CORIZON INC., et al.,

        Defendants.
_____/

**OPINION AND ORDER
ACCEPTING IN PART AND REJECTING IN PART THE RECOMMENDATION
CONTAINED IN THE MAGISTRATE JUDGE'S AUGUST 10, 2016 REPORT &
RECOMMENDATION (Dkt. 87); GRANTING DEFENDANT CORIZON'S MOTION
FOR SUMMARY JUDGMENT (Dkt. 68); GRANTING IN PART AND DENYING IN
PART DEFENDANT CURTIS'S MOTION FOR SUMMARY JUDGMENT (Dkt. 71);
GRANTING IN PART AND DENYING IN PART DEFENDANT SMITH'S MOTION
FOR SUMMARY JUDGMENT (Dkt. 77); AND DENYING PLAINTIFF'S MOTION FOR
DECLARATORY JUDGMENT (Dkt. 66)**

Plaintiff Christopher Imelmann, a state prisoner at the Lakeland Correctional Facility ("LCF") in Coldwater, Michigan, brings two civil rights claims against Defendants, who are various entities involved in providing the healthcare Plaintiff receives at LCF. Plaintiff is a paraplegic who has been using a urethral catheter to empty his bladder since 1985 due to a spinal cord injury. See Compl. ¶ 25 (Dkt. 1). Plaintiff alleges that, after he was transferred to LCF in 2012, the healthcare staff there refused to provide him the catheters and lubricant sufficient to meet his prescribed medical needs. See id. ¶ 26. He further alleges that Defendant Corizon, Inc. should have granted physicians' referrals to a neurosurgeon to correct broken instrumentation in his spine. See id. ¶ 18. His complaint seeks injunctive and monetary relief, alleging that Defendants discriminated against him in violation of Title II of the Americans with Disabilities

Act ("ADA") and subjected him to cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution by refusing to provide him with sufficient catheters and lubricant and other medical attention.

On August 10, 2016, Magistrate Judge Stephanie Dawkins Davis issued a Report & Recommendation ("R&R") (Dkt. 87), which recommends granting the motions for summary judgment filed by remaining Defendants Corizon, Dorene Smith, and Sharon Curtis. Pursuant to a partial extension granted by this Court (Dkt. 89), Plaintiff timely filed his objections to the R&R on September 9, 2016 (Dkt. 92). Defendants have filed no objections to the R&R, nor any response to Plaintiff's objections.

The pertinent facts and procedural history are adequately set forth in the R&R and need not be repeated here. For the reasons set forth below, the recommendation contained in the R&R is accepted in part and rejected in part. Defendant Corizon's motion for summary judgment (Dkt. 68) is granted; Defendant Curtis's motion for summary judgment (Dkt. 71) is granted in part and denied in part; Defendant Smith's motion for summary judgment (Dkt. 77) is granted in part and denied in part; and Plaintiff's motion for declaratory judgment (Dkt. 66) is denied.

## I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b), this Court reviews de novo those portions of the R&R to which specific objections have been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Any arguments made for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

2

## II.  DISCUSSION

### A.  Defendant Corizon's Motion for Summary Judgment (Dkt. 68)

Plaintiff does not object to the R&R's recommendation that his claim against Defendant Corizon should be dismissed due to Plaintiff's failure to exhaust his administrative remedies. Indeed, Plaintiff expressly conceded this issue in his response to Corizon's motion.  See Pl. Resp. at 2 (Dkt. 82).  Because the Court finds no clear error, it accepts the recommendation and dismisses Plaintiff's claim against Corizon respecting the catheterization issue.  See Thomas v. Arn, 474 U.S. 140, 150 (1985); see also Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

### B.  Curtis's and Smith's Motions for Summary Judgment (Dkts. 71, 77)

#### 1.  Plaintiff's Eighth Amendment claim

An Eighth Amendment claim based upon conditions in a prison must satisfy an objective and a subjective component.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The objective component asks whether the complained-of harm "is, objectively, sufficiently serious."  Id.  For the purposes of their motions, Curtis and Smith concede that Plaintiff satisfied the objective component of his Eighth Amendment claim.  See Curtis Mot. at 4; Smith Mot. at 11.  They focus, therefore, on the subjective component, which, in the context of prisoners' health care, requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000) (citing Farmer, 511 U.S. at 834).  A "sufficiently culpable state of mind" has been described as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

3

> aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.

In nearly identical motions, both Smith and Curtis argue that Plaintiff cannot prove that either of them possessed a sufficiently culpable state of mind to support the subjective prong of an Eighth Amendment claim. The magistrate judge agreed, recommending that this Court grant Smith's and Curtis's motions for summary judgment. See R&R at 22. Notwithstanding Plaintiff's claim that Smith's and Curtis's treatment decisions were knowingly made contrary to a prescription for lubricant issued by Dr. Kenneth Jordan, the magistrate judge recommended:

> The law is clear where a prisoner is provided with treatment, the fact that he is not provided with the best possible treatment, or treatment that plaintiff disagrees with, does not make the course selected unacceptable or unconstitutional. The amount of catheters and lubricating jelly that Curtis and Smith dispensed to plaintiff, while apparently not optimal, were within the range approved by the chief medical officer in the infection control manual. Thus, the undersigned concludes that plaintiff has not shown that nurses Curtis or Smith were deliberately indifferent to his medical needs by providing treatment that was within the approved range.

R&R at 22 (emphasis added).

Plaintiff objects to this reasoning on two grounds. First, he claims that the infection control manual (also known as the "self-catheterization guidelines") should be irrelevant when a doctor's prescription authorizes a different course of conduct. See Pl. Obj. at 4 ("There is absolutely nothing in the language of the Infection Control Manual that authorizes Defendants to refuse Dr. Jordan's prescription for lubrication."). Second, he claims that Smith and Curtis did not, in fact, comply with the infection control manual, which requires staff to provide inmates like Plaintiff with "[l]ubricant, if used."

Plaintiff's complaint alleged, repeatedly, that he received no lubricating jelly at all. See Compl. ¶¶ 26-29. At the summary judgment stage, Plaintiff supported this factual claim with an affidavit. See Imelmann Aff. at 1-2, Pl. Resp. at 20-21 (cm/ecf pages) (Dkt. 85). And Curtis's motion for summary judgment attaches the Michigan Department of Corrections' self-catheterization guidelines for medical staff, which does instruct medical providers that a prisoner "shall be provided . . . [l]ubricant if used." See Self-Catheterization Guidelines (cm/ecf pages), Ex. A to Curtis Mot. at 6, 8 (cm/ecf pages) (Dkt. 71-2).

Plaintiff's argument regarding his prescription is persuasive. Plaintiff makes the unrebutted assertion that his prescription unequivocally required the lubricant — without which he felt pain akin to "torture" — and he alleged that Defendants were aware of that prescription. Compl. ¶ 26; Imelmann Aff. at 1-2, Pl. Resp. at 20-21 (cm/ecf pages). Nevertheless, Plaintiff states that he asked Curtis about the lubricant and informed her of his prescription — to which she allegedly replied, "I run things around here[,] not the [d]octor, I don't care what he wrote." Imelmann Aff. at 3, Pl. Resp. at 22 (cm/ecf page). Plaintiff's affidavit further alleges that he asked Smith for the lubricant, to which Smith responded, "use tap water, it won't kill you." Id. Defendants, on the other hand, claim to have no recollection of these events. See Curtis Aff. at 2-3, Ex. A to Curtis Mot.; Smith Aff. at 2-3, Ex. B to Smith Mot. (Dkt. 77-3). However, Defendants' "no-recollection" affidavits are not deemed to be based on personal knowledge, and thus have no value on summary judgment. See Hadley v. Inmon, No. 3:04-CV-121, 2006 WL 141750, at *8 (E.D. Tenn. Jan. 18, 2006) (collecting cases) (statements in affidavits that affiant "do[es] not recall" a fact does not satisfy Federal Rule of Civil Procedure 56).

"An allegation that a prison official has intentionally ignored the instructions of a prisoner's treating physician by not dispensing prescribed medication is sufficient to state

5

deliberate indifference claim." Coffey v. Whitley Cnty. Det. Ctr., No. CIV.A. 08-289-GFVT, 2010 WL 5653658, at *9 (E.D. Ky. Dec. 21, 2010), report and recommendation adopted, No. CIV. 08-289-GFVT, 2011 WL 289840 (E.D. Ky. Jan. 27, 2011) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976) (deliberate indifference occurs upon "intentionally interfering with the treatment once prescribed")); see also Boretti v. Wiscomb, 930 F.2d 1150, 1154-1155 (6th Cir. 1991) (refusal to fill pain-relieving prescription or perform requested wound care supported "deliberate indifference" claim); Northington v. Armstrong, No. 1:10-CV-424, 2011 WL 3209079, at *2 (W.D. Mich. July 28, 2011) (conflicting claims regarding whether defendant refused to fill plaintiff's prescription were sufficient to survive summary judgment).

In addition, Curtis and Smith have not shown an absence of material fact as to whether they complied with their internal procedures. Although the self-catheterization guidelines' phrase, "lubricant if used," does suggest that self-catheterization could occur without any lubricant, it also contemplates that some lubricant will be provided when a prescription calls for it and/or the patient's routine includes it. See also Self-Catheterization Guidelines, Ex. A to Curtis Mot. at 9 (cm/ecf page) (instructing male patients to "[l]ubricate the catheter, if this is part of your routine"). The self-catheterization guidelines direct employees using the mandatory "shall," id., and the responses to Plaintiff's grievances refer to them as "policy," see Step I Grievance App. Resp. & Step II Grievance App. Resp., No. LCF 2013-02-0164-12i1, Ex. B to Ryder Mot. for Summary Judgment at 38, 34 (cm/ecf pages) (Dkt. 21-3). A violation of internal policy has been viewed as supporting the subjective prong of the 'deliberate indifference' inquiry. See Jerauld ex rel. Robinson v. Carl, 405 F. App'x 970, 978 (6th Cir. 2010) (granting summary judgment to Eighth Amendment defendant, to whom no policies applied, by distinguishing his actions from a case where internal policies required action); see also Comstock

v. McCrary, 273 F.3d 693, 709 (6th Cir. 2001) (denying qualified immunity to Eighth Amendment defendant in part because defendant violated internal suicide-watch policy).

The conspicuous absence of "lubricant" from the pertinent Step II grievance response's recitation of the self-catheterization guidelines further supports the conclusion that Defendants have not shown an absence of a question of material fact. See Step II Grievance App. Resp., No. LCF 2013-02-0164-12i1, Ex. B to Ryder Mot. for Summary Judgment at 34 (cm/ecf page). This is because — given the guidelines' explicit instruction to provide "lubricant if used" — the grievance response's conspicuous omission of the only part of the guidelines relevant to Plaintiff's grievance could support an inference that the guidelines were not followed, and that a "cover up," of sorts, was taking place. Taylor v. Franklin Cnty., Ky., 104 F. App'x 531, 539 (6th Cir. 2004) (in evaluating the subjective prong of a deliberate indifference claim, "[w]hether a prison official has the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inferences from circumstantial evidence" (quoting Farmer, 511 U.S. at 842)). The Court, therefore, disagrees with the magistrate judge's conclusion that the amount of lubricating jelly dispensed to Plaintiff was "within the range approved by the chief medical officer in the infection control manual," R&R at 22.

Because the magistrate judge concluded that the conduct alleged by Plaintiff could not constitute an Eighth Amendment violation, she did not reach Smith's and Curtis's other arguments for why no Eighth Amendment violation occurred here. This Court will consider those arguments now.

Plaintiff alleges that both Curtis and Smith circulated a memo forbidding staff to dispense lubricant to Plaintiff for any reason. See Pl. Br. at 6; Compl. ¶ 27; see also Step I Grievance App., No. LCF 2013-02-0164-12i1, Ex. B to Ryder Mot. for Summary Judgment at 35 (cm/ecf

7

page). Curtis and Smith claim that the allegation regarding the memo does not create a genuine issue of material fact because Plaintiff did not allege that either of them authored the memo. See Curtis Mot. at 5; Smith Mot. at 12-13. However, neither Defendant offers any legal distinction between personally authoring the memo and causing it to be circulated. Moreover, Plaintiff does claim that Smith authored the memo. See Pl. Br. at 6.

Curtis and Smith also point out that Plaintiff has not produced the alleged memo. See Curtis Mot. at 5; Smith Mot. at 12-13. Both Defendants, however, stop short of stating that the memo does not exist; instead, they equivocally state that each "has no recollection of creating or circulating a memo prohibiting the dispensing of lubricating jelly." Curtis Mot. at 5; see also Smith Mot. at 13 ("Nor does she have any recollection . . ."). Whether the memo can be presently located is irrelevant, given that there is, at least, arguably conflicting testimony that it did exist and what it said. This is sufficient to preclude summary judgment for Curtis and Smith.

Apart from the memo, Curtis also claims that Plaintiff never alleges that he asked her for the lubricant, see Curtis Mot. at 5; Smith claims that she has "no recollection" of any such request, see Smith Mot. at 13. But Plaintiff's affidavit, attached to his response to the motions for summary judgment, explicitly claims that he asked Curtis about the lubricant and informed her of his prescription — to which she allegedly replied, "I run things around here[,] not the [d]octor, I don't care what he wrote." Imelmann Aff. at 3, Pl. Resp. at 22 (cm/ecf page). The affidavit further alleges that Plaintiff asked Smith for the lubricant, to which Smith allegedly responded, "use tap water, it won't kill you." Id. Taking Plaintiff's supported factual allegations as true, see Williams v. Mehra, 186 F.3d 685, 692 (6th Cir. 1999), Defendants have not established the absence of a question of material fact whether Plaintiff requested the lubricant, as well as their subjective mental state in denying his request.

Defendants also contend that Plaintiff did not allege the requisite "evidence of a detrimental effect." Curtis Mot. at 8; Smith. Mot. at 15 (both citing Napier v. Madison Cnty., 238 F.3d 739, 742 (6th Cir. 2001) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.")). The Court rejects this argument, because it goes to the objective component of an Eighth Amendment violation, see Napier, 238 F.3d at 743, which Curtis and Smith both expressly conceded was satisfied for purposes of these motions, see Curtis Mot. at 4; Smith. Mot. at 11.

In sum, Defendants have not shown an absence of material fact as to (i) whether they intentionally refused to fill Plaintiff's prescription; and (ii) whether the internal self-catheterization guidelines were followed. Therefore, the Court rejects the recommendation contained in the R&R regarding Curtis and Smith.

### 2. Curtis's and Smith's immunity arguments

Notwithstanding the fact questions as to the Eighth Amendment violations discussed above, Curtis and Smith may still be entitled to summary judgment on the basis of immunity. The magistrate judge did not reach Curtis's and Smith's Eleventh Amendment and qualified immunity arguments. See R&R at 22. Those arguments are considered now.

Plaintiff sued Smith and Curtis in both their individual and official capacities. See Compl. ¶¶ 8, 10. An Eleventh Amendment immunity defense may only be invoked as a defense to official-capacity claims. See Hafer v. Melo, 502 U.S. 21, 30-31 (1991). The Eleventh Amendment assures, as a general matter, that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "The general rule is that relief

9

sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Hawaii v. Gordon, 373 U.S. 57, 58 (1963) (per curiam); see also Mingus v. Butler, 591 F.3d 474, 481 (6th Cir. 2010) ("To determine whether a state department or agency can receive Eleventh Amendment immunity, the primary issue is whether the state itself would be liable for money damages should the entity be found liable.").

"[A]n important exception to this general rule" operates when a lawsuit challenges "the constitutionality of a state official's action" prospectively; in such a case, a lawsuit seeking declaratory or injunctive relief is not one against the State. Pennhurst, 465 U.S. at 102-103 (citing Ex parte Young, 209 U.S. 123 (1908)). An "official-capacity claim for retroactive relief," such as a money judgment for past actions, is, on the other hand, "deemed to be against the State whose officers are the nominal defendants, [and] the claim is barred by the Eleventh Amendment." Doe v. Wigginton, 21 F.3d 733, 737 (6th Cir. 1994); see also Green v. Mansour, 474 U.S. 64, 68 (1985) ("Young also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. We have refused to extend the reasoning of Young, however, to claims for retrospective relief.").

Because Plaintiff's official-capacity claims under 42 U.S.C. § 1983 against Smith and Curtis can only result in a forward-looking injunction, the claims for monetary relief are dismissed for failing to state a claim upon which relief can be granted. Nor is injunctive relief available; as acknowledged in this Court's February 23, 2016 Opinion and Order, Plaintiff's catheterization needs are currently being met. See 2/23/2016 Op. & Order at 4 (Dkt. 78).

Accordingly, he cannot show the risk of future harm necessary to obtain prospective relief in the form of an injunction. Id.[1]

Because the Eleventh Amendment only immunizes a defendant from official-capacity claims, rather than personal-capacity claims, see Hafer, 502 U.S. at 30, Smith and Curtis must rely on, and show an entitlement to, qualified immunity in order to avoid Plaintiff's personal-capacity claims, see Forrester v. White, 484 U.S. 219, 224 (1988) ("Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy, and the Court has recognized a category of 'qualified' immunity that avoids unnecessarily extending the scope of the traditional concept of absolute immunity."). As explained below, neither Curtis nor Smith has shown an entitlement to qualified immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Sixth Circuit has set forth a three-part test in order to determine whether a government official is entitled to the affirmative defense of qualified immunity:

> The first inquiry is whether the Plaintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient

---

[1] This dismissal of Plaintiff's official-capacity claims is limited to Plaintiff's Eighth Amendment claim brought under § 1983. In addition to his § 1983 claim, Plaintiff also brought a claim under Title II of the Americans with Disabilities Act ("ADA") based upon the same events. Compl. ¶ 42. Defendants do not address this claim in their motions. Furthermore, the Supreme Court has held that Congress's abrogation of sovereign immunity for Title II claims is effective in certain circumstances. See United States v. Georgia, 546 U.S. 151, 157-159 (2006).

> evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.

Higgason v. Stephens, 288 F.3d 868, 876 (6th Cir. 2002). In making this tripartite inquiry, the Court "take[s] the facts to be those alleged by Plaintiff and supported by more than a scintilla of evidence." Williams, 186 F.3d at 692.

Smith and Curtis only claim that Plaintiff has not satisfied the second part of the test, i.e., that the right invoked was not clearly established at the time, such that a reasonable official would have understood that his behavior violated that right. See Curtis Mot. at 11; Smith Mot. at 18-19. The extent of their identical arguments on this point is an incorporation by reference of their earlier argument (which, in fact, more closely aligns with the first part of the test): that Plaintiff's complained-of treatment cannot give rise to an Eighth Amendment violation.

As noted above, as to the first inquiry, this conclusion is in error. If proved, a claim that a prison official deliberately interfered with a medically prescribed treatment plan can support a valid Eighth Amendment claim. See Estelle, 429 U.S. at 104-105. In addition, a reasonable official should have understood that this behavior violated Plaintiff's Eighth Amendment right, because the right, as it applies to these facts, is "clearly established." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred." Durham v. Nu'Man, 97 F.3d 862, 866 (6th Cir. 1996). Here, the Supreme Court has already instructed that "intentionally interfering with a [prescribed] treatment" can establish a constitutional violation, Estelle, 429 U.S. at 104-105, and that is exactly what Plaintiff alleges. Although this part of Estelle may be considered dicta, the Sixth Circuit has denied summary judgment to a jail nurse defendant for the same reason:

12

> Generally, officials who perform discretionary functions have at least qualified immunity from individual liability for damages that have resulted from the exercise of their discretionary functions. . . . Complying with a doctor's prescription or treatment plan is a ministerial function, not a discretionary one. For this reason, we don't believe defendant Wiscomb's motion for summary judgment should be granted on the basis of qualified immunity.

See Boretti, 930 F.2d at 1156; see also Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir. 1991) (to establish rebuttable presumption of qualified immunity, initial burden is on defendants to present facts that, if true, establishes that they were acting in the scope of their discretionary authority).

Finally, Plaintiff has made sufficient allegations that, if believed, indicate that what the officials allegedly did was objectively unreasonable in light of the clearly established rights. These include allegations that Curtis acknowledged the prescribing physician's treatment plan, but nevertheless stated that "I run things around here[,] not the [d]octor, I don't care what he wrote," Imelmann Aff. at 3, Pl. Resp. at 22 (cm/ecf page), as well as that Smith prevented those beneath her from complying with the prescription while telling Plaintiff to "use tap water, it won't kill you," id.[2]

Accordingly, Curtis's and Smith's motions for summary judgment on the basis of qualified immunity are denied.

### 3. Smith's exhaustion arguments

The magistrate judge concluded that Curtis and Smith did not violate Plaintiff's constitutional rights, and thus it was "not necessary to determine whether plaintiff exhausted his administrative remedies as to defendant Smith." R&R at 22. Because this Court concludes that

---

[2] These allegations also serve to refute Smith's and Curtis's arguments, based on Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), that Plaintiff's claims regarding their states of mind are unsupported "bare assertions." See Smith Mot. at 13-14; Curtis Mot. at 6-7.

13

there is a question of fact whether Plaintiff's constitutional rights were violated, Smith's exhaustion arguments must be addressed.

The R&R did address one of Smith's two exhaustion arguments, and this Court finds its reasoning persuasive. Smith first argued that Plaintiff's failure to specifically mention her "tap water" comments in his grievance amounted to a failure to exhaust. See Smith. Mot. at 8. The magistrate judge disagreed, stating that "the statement [is not] a separate claim, but rather . . . a factual allegation advanced by plaintiff in support of his broader claim made against Smith in Grievance LCF-13-02-0164-12il, namely, nurses Smith and Curtis' alleged failure to provide lubricating jelly with his catheters." R&R at 17-18. Smith did not file an objection to this conclusion, and the Court does not believe it was reached in error. Accordingly, this exhaustion claim is rejected.

Smith's second exhaustion argument — which the R&R did not address — is that Plaintiff "did not follow the procedures of the policy by filing a Step III grievance appeal prior to filing this lawsuit." Smith Mot. at 9. Plaintiff disagreed, claiming that he did exhaust his remedies as to Smith, see Pl. Resp. at 5, and noting the existence of a Step III grievance decision, id. at 7-8.[3]

Indeed, the record contains a Step III grievance, as well as the facility's response denying that grievance. See Step III Grievance App. & Resp., No. LCF 2013-02-0164-12i1, Ex. B to

---

[3] The Court construes Smith's reference to a missing "Step III grievance appeal" as an appeal to Step III, rather than an appeal from the Step III response. Smith points to no provision in Policy Directive 03.02.130 that Plaintiff allegedly violated, and the Court's review of the grievance policy, MDOC PD 03.02.130, Ex. A to Ryder Mot. (Dkt. 21-2), did not uncover any method by which a Step III Grievance Response can be further administratively appealed. Further, whereas the Step II Grievance Response contains a space for the inmate to describe his Step III appeal, the Step III response contains no such space. See Step III Grievance App. & Resp., No. LCF 2013-02-0164-12i1, Ex. B to Ryder Mot. for Summary Judgment at 33, 32 (cm/ecf pages).

Ryder Mot. for Summary Judgment at 33, 32 (cm/ecf pages).[4] The Step III grievance appeal form notes that the Step II decision was returned to Plaintiff on April 15, 2013, and that he submitted his Step III grievance nine days later, on April 24, 2013. Id. at 33. This was well before the lawsuit was filed in January 2015. Based on the record evidence, the Court rejects Smith's argument that Plaintiff failed to file a Step III grievance prior to filing his lawsuit.

For these reasons, Smith's exhaustion arguments lack merit.

### C. Plaintiff's Motion for Declaratory Judgment (Dkt. 66)

Plaintiff also moved for a declaratory ruling on the applicability to his case of a Michigan statute mandating the "single-use" of catheters in certain circumstances, Mich. Comp. Laws § 333.20153 (Dkt. 66). The magistrate judge recommended that this Court should decline jurisdiction over this state-law issue because "Michigan courts have not yet opined on the specific issue raised by plaintiff." See R&R at 23. Plaintiff did not object to this portion of the R&R. Accordingly, having found no clear error in that recommendation, the Court adopts it and denies Plaintiff's motion for declaratory judgment.

### III. CONCLUSION

For the reasons set forth above, Defendant Corizon's motion for summary judgment (Dkt. 68) is granted; Defendant Curtis's motion for summary judgment (Dkt. 71) is granted as to the official-capacity claims against her, and denied as to the personal-capacity claims against her; Defendant Smith's motion for summary judgment (Dkt. 77) is granted as to the official-capacity claims against her, and denied as to the personal-capacity claims against her; and Plaintiff's motion for declaratory judgment (Dkt. 66) is denied. Because neither Curtis nor Smith

---

[4] Although the Step III Grievance Response does not contain the grievance identifier number, it specifically discusses the lubricant issue. Further, the Response is paginated immediately before the Step III Grievance Appeal document to which it responds, and the exhibit is otherwise paginated in reverse chronological order.

mentioned Plaintiff's claims under Title II of the ADA, those claims remain pending as against them in both their official and personal capacities.

This matter remains referred to Magistrate Judge Stephanie Dawkins Davis for all subsequent pretrial proceedings.  <u>See</u> 4/30/2015 Referral Order (Dkt. 14).

SO ORDERED.

Dated:  September 28, 2016          s/Mark A. Goldsmith
    Detroit, Michigan          MARK A. GOLDSMITH
        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2016.

        s/Marlena Williams
        Acting in the absence of Karri Sandusky
        Case Manager